Good morning, everyone. Before we call the first case, I do want to advise the attorneys that Justice Taylor is the third panel member on this case. He has been recuperating from some minor surgery, so he will not be here today. However, he is the third panel member. He will be able to listen to the arguments and have access to the record and the briefs, obviously. So with that, we will call the first case. And if both attorneys would be so kind as to step up and identify yourselves for the record. Good morning, Your Honors. My name is Lynn Dowd for the plaintiff appellant. And I'm Julian Henriques for the City of Chicago. Good morning to both of you. Each side will have approximately 15 minutes to argue. And from that, Ms. Dowd, you may save out some time for your rebuttal. Thank you, Your Honor. I'd like to do that. All right. You may proceed. May it please the Court. Again, for the record, my name is Lynn Dowd, and I'm here today with the trial counsel, Peter Kiggins, counsel. At issue, Your Honors, as you're, I'm sure, aware, is whether summary judgment was properly entered against my client who slipped and fell on a metal plate on January 1st, 2008. And as a preliminary matter, what we have learned through the course of discovery is that where she fell was, in fact, outside of the formal crosswalk lines at the intersection at Adams and Wacker. Does that end the case? Well, I suspect not. I mean, I will be so bold as to imagine the Court wouldn't have called this for oral argument. But that, I think, is the essence of the City's position, that if you are outside the white lines, that's the end of it. They get immunity under the Tort Immunity Act. And respectfully, I think the trial court made a similar error in analyzing the facts and the law. And I'd like to provide some clarity to this area of the law. I think our facts, I think what's before the Court today are facts of first impression. I mean, there's a lot of cases dealing with Section 3-102 of the Tort Immunity Act. And, but I don't think the analysis presents an issue of first impression. I think, you know, obviously I'm the advocate, but I'd like to explain to the Court why I think we do fall within the concept, the legal concept of an intended and permitted user. And if I may, I'd like to direct the Court, or just highlight a couple of important facts. I mean, as the Court knows from the record, Ms. Harden, my client, fell on this metal plate on a winter day as she was waiting to cross the intersection at Adams and Wacker. And she was with a colleague, Duran White. And the evidence of record is that each of them testified there was snow on the ground. Each of them believed they were within the crosswalk. Now let's stop right there. Is their subjective belief something we're looking at, or are we looking at the intent of the municipality? Their subjective beliefs are relevant evidence. The subjective intent of the city is not the standard. There's an objective standard in the case law. Right, but is it, are we really looking at what they thought as opposed to what the city, the municipality, intended as far as an intended or permitted user? I believe the Court needs to look at both according to the case law. That is one fact. Now what case would you cite that would tell us to look at what Ms. Harden and her colleague thought as far as whether they were in the crosswalk? What case would you cite for that? Of the cases in the parties' briefs, I don't think any court has addressed that specific fact as being dispositive. All right. But I do think it's a fact for the jury to consider. But I think there's other factors, and I could probably, if I go into those, maybe answer the Court's concerns. What we know, first of all, let me just back up. As we all know, the common law imposes a duty on the city and every property owner to maintain its property in a reasonably safe condition in light of the reasonably foreseeable uses. The statute, the Tort Immunity Act, which as we know is in derogation of the common law Must be strictly construed. Yes. All right. Provides an exception. But I think the Court read that statute too narrowly because, and this is where the intended and permitted user language comes in, is that the local public entity has a duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use and the exercise of the ordinary care of people, and here's where the language comes in, whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used. And I would cite the Court to the Marshall and Curatola Supreme Court opinions, which teach us that conditions matter. What were the conditions in Curatola? Curatola, that was clean and clear. Excuse me, Curatola doesn't talk about conditions, but Marshall does. What were the facts in Marshall? Marshall is where the plaintiff was walking down a sidewalk and then the sidewalk was covered with mud, so he decided to go into the easement parkway area, and the Supreme Court said conditions matter, that it was reasonably foreseeable that when the city sidewalk was covered with the mud that he would enter this parkway and he fell into a depressed area and got injured. So that's our Supreme Court. And actually, for purposes of today, I tried to line up the cases. They're pretty, you know, the ones that say yes, someone is an intended and permitted user and those that say no, they're not. May I just interrupt you? Yes. Is the first question that the Court looks at is a question of law, whether there's a duty? Correct. All right. And under this idea about duty, there's a number of factors that go into that question, correct? Yes. And one of them is the burden. Yes. Now, in this particular case, if we were to agree with you about this position, then there would be a burden, would there not, of the city to make certain that every single time there's a dusting of snow that the trucks must be out there plowing every single crosswalk in the city to ensure that these intended users can safely traverse the street? I don't think that's respectfully, no, that's not the issue before the Court. This isn't, if we were to, this is a summary judgment. Yes. It's de novo review. Yes. Duty is a question of law. Correct. One of the things we would have to consider in order to create what would be certainly an exception, if we consider this under a marked crosswalk theory, we'll get to the unmarked, but under a marked crosswalk theory, one of the things we would have to consider is whether or not this burden of every crosswalk would become this hazard that has to be resolved so that the intended users are able to safely cross. Let me answer your question this way, Your Honor. The city may well have that duty, but that's not the duty at issue today. What happened here, we know from the witness Ron Vinion, is that the city placed this large metal plate at this intersection. This wasn't just someone slipping and falling on snow outside of an intersection. Now, isn't that a completely different scenario, and aren't you suggesting something else that you've never raised before about the plate? Are you saying it's a dangerous condition or something else we're supposed to be looking at? No. That's a fact that's part and parcel of this case, and we did raise it. It's in our complaint, and it's in our brief, and it's in the case law discussed in our briefs, that one of the allegations is they created this unreasonably dangerous condition with this metal plate. Outside the crosswalk, though. As we have come to learn, correct. All right. Which had the hole the size of a grapefruit in it, and this is where the facts, all of the facts under summary judgment are relevant. Because of the snow, according to the plaintiff and her co-worker, when she exited the CTA bus, there was snow on the ground. Snow was over the plate. Snow was over the lines. She was in the middle of a throng of pedestrians. We've all crossed these intersections on those winter days. She was in the middle. She was surrounded by people. Should a pedestrian move with the flow, or is there a requirement that they wait for the availability of the crosswalk? You know, most people don't know that they're not covered, so to speak, if they walk outside the crosswalk.  And so, but the point is, does a pedestrian get to go wherever they want, or are they supposed to wait until there is room in that crosswalk to walk? So that they, you know, that there is this duty. That is where what she thought is relevant, and that is for a jury. If they want to argue. Did Marshall say that, that it's relevant what the pedestrian thought? No case says it's relevant what the pedestrian thought. But I think this is a fair and important fact. Because it's an, well, it's not even, let me back up. If we put aside. Why don't we put it in the language of the statute, though? Because that important sentence has two important clauses. Like you said, we've all been, well, I shouldn't say all, but many of us have been at the corner of Adams and Wecker at 8 o'clock in the morning. And we know that there's a train station right there, and there's a lot of people. And there's a lot of people outside that crosswalk. Well, having crossed that walk hundreds of times. In February. And I think this is. It was really cold. Directed to Justice McBride's question. The objective indicators, and this is where there is the case to say it. Marshall, Peritola, Cavallis. Cavallis in particular. Under Pedrick, there's snow, the lines are white. We get the reasonable inference, not the city, as to what that means. I think it's a reasonable inference that the snow made the lines invisible. Therefore, the law says, and it reverts to the legal question, what then becomes the crosswalk? Well, what then does become the crosswalk? Not the plate area. Certainly not. You're not arguing that the plate area now becomes an unmarked crosswalk, are you? I think, yes, that as a matter of fact, it did become part of an unmarked crosswalk. And that was reasonably foreseeable. Doesn't the statute define what an unmarked crosswalk is? The Vehicle Code does. Section 1-113, and the courts have said it's either. It says that part of the roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway, measured from the curbs, or in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk. Are we in that situation? No, we are not. All right. So we're back up to that part of the roadway. Right. Of an intersection included within the connections of the lateral lines of the sidewalks. Now, I've seen the picture. We don't have a question of fact, whether the metal plate was within those lateral lines of the sidewalk. Well, if you look at the record and the photos, I don't think you're going to be able to succeed that way. I don't think the photos answer that question. I don't think that's a fair conclusion. I think, you know, that's an argument they can make to the jury, but I think that is purely a question of fact. But more importantly, it's not just that. The Supreme Court has said, and even the statute, excuse me, the Supreme Court has interpreted the statute, that in the absence of lines, you are going to look to other indicators. And those lines are not dispositive. Would another indicator be an area where there's an obvious plate because of some kind of a problem? Don't you think that sort of kind of goes against what you're saying? No, because on the day in question, there was not an obvious plate. This plate was covered with snow, and that's the undisputed evidence that it was covered with snow. They presented the photo on a sunny day. Didn't she testify, though, that she specifically walked down the plate and caught her boot? Yes, she figured out that's what happened after the fact. But her testimony is she did not know, one, that she was crossing outside the lines or that she was crossing over this plate. That is her testimony on the day in question. Whenever she was deposed, she was presented with a picture of the intersection on a sunny, clear day, and they walked her through it. And she's like, well, and that's why I say we've learned that the plate is outside of the lines. But the facts are- Can I ask you one other question? Yes. If you had a case, or could you direct us to a case where the courts have ever taken a marked crosswalk case? We know there's a marked crosswalk here. Taken a marked crosswalk case and turned it into an unmarked crosswalk case? No, I cannot. We would be extending the law rather dramatically if we were to say that even though it's undisputed that there's a marked crosswalk in this case, we're going to now, as a matter of law, hold that this should be decided as an unmarked crosswalk. Well, certainly this case, that would be the first time a reviewing court made that decision. Certainly. Because we do have unique facts. But this is the case of the invisible lines on the day in question. So then what? When you have invisible lines, and here's where the case law gives us guidance. When we know the courts have interpreted, and I think we can put this together logically and fairly, when you have an intended and permitted user one, clearly when someone's within the lines, we know that. If there are no lines, the courts direct us to look at other markings and also custom. And this is why I submit the pedestrian traffic is relevant. She was in the middle of this group who waited until the crosswalk time. Well, that would be another major leap into an area of unknown to say that now we're going to be looking at the custom. And besides, what evidence is there in the record to suggest that at this particular intersection, that it is the custom for large throngs of people to walk outside the crosswalk and that we should consider that? Your Honor, I don't think that's the question. That it's custom that large throngs of people walk outside the crosswalk. On the day in question, we had a group of commuters in the morning at 8 o'clock waiting legally, patiently, reasonably to cross the intersection. We're not talking about the occasional outlier. We've all seen the guy jumping around the median or somebody jaywalking across the street. We have a group of people acting reasonably, trying to cross the crosswalk safely. They waited for the light. It's not the people racing on a don't-walk light. And the group, based on the snow, landed at what they believed was the crosswalk. And I'm just thinking, even myself as a human being, when you can't see the lines, you know, having learned. Most people have absolutely no idea, you know, why they're supposed to be in the crosswalk. Well, that might be true. I mean, they just kind of follow it because there's lines and, you know, they see the walk sign and then they cross. But most people have absolutely no idea why they're even inside the crosswalk. And it's a matter of safety. Well, I submit that's debatable. I submit that's debatable. I mean, you know, I have children and I try to teach them to walk on the lines. Yeah, but it's a matter of safety. Certainly. Certainly. But if you can't see it, then what? What do you do as a human being? Then we're going to impose a duty, a major duty, to make sure that the crosswalks are clear. But no, no, because that's not all they had to do. We're talking about a hazard they put right at this crosswalk. There was no cone. We're talking about one intersection. I'm not talking about everyone. And perhaps that duty exists, but that's another case. In this case, there's a hazard the city admits it put there. It knew it was there. We're talking about the whole size of a grapefruit. My client and other pedestrians thought they were crossing the crosswalk. There's no evidence they were jaywalking. There's no evidence they were zipping around. There's no evidence that they were not trying to walk as the reasonable group does every single day within the confines of a crosswalk. When you can't see the lines, you look, you go in a straight fashion, and the group proceeded. She was in the middle of the group. These are, you know, this whole argument with conclusion and argument is for a jury to resolve. But, I mean, if the court is going to say the lines are it, then that's a bright line rule, a rule of strict non-liability. And I don't believe the case law supports that interpretation because other cases say, and this is where Marshall's very interesting, all the cases talk, they bring us back to torts 101, the rule of reasonable foreseeability. And Marshall even says, depending on the property of the area. I'm thinking, so is there a reasonable foreseeability that when you have a condition such as the one in this case, the light dusting of snow diminishes the visibility of the crosswalk. There's a probability, reasonable probability that people will walk outside those lines. Absolutely. But that's fine. I agree you could argue that. My concern is that in this case you also have to look at, you know, the burden that would be imposed if we're going to open the door in this one. The burden in this case was de minimis. Again, we're talking about one intersection where they placed a plate, a large plate with a large hole. The city was uniquely charged with knowing it. Listen, it snows every winter in Chicago. We all know that. And actually the forecasts are better. When you have that hazardous condition, yeah, that intersection you make sure that's where the trucks go first. That's where the plows go first. Put a cone up. Something. Do something to set this apart. Or maybe you don't put a plate with a hole in it within two feet of a crosswalk. Thank you, Your Honor. Yes. It's certainly foreseeable to the city that at that, what I was trying to say earlier, that at that intersection that, first of all, it's foreseeable that it will snow in Chicago. It's foreseeable that that plate will be covered with snow at some point in time. And it's also foreseeable that that throng is going to be outside the crosswalk. It's foreseeable that people are going to be, let's put it more plainly, it's foreseeable that people are going to be walking on that plate, right? Absolutely. So my question is, that was just a long speech. My question is, I think the concern is how far do we extend, you're asking us to extend the duty. The question is how far do we extend the duty outside the crosswalk in that circumstance, if we were to do something like that? I mean, where does it stop? How fat can the throng be? Respectfully, I'm not asking the court to extend the duty at all. The duty is set forth in the common law and the statute. And, again, this is again where I think. We're looking at the statute. The tort immunity, 3-102. It codifies the common law duty to maintain your property in a reasonably safe condition. Is that section between that one white line? I mean, this is what it comes down to. Because it is foreseeable, okay? That's the second clause of that section. Is that portion outside the crosswalk line and the stop line, is that a portion where the entity intended and permitted the use? That's where we're at, right? And the Supreme Court says the answer to that question is not what the city is going to get up and state subjectively what they intended, but you look to the property and the conditions at that time and the signs, the other markings, the customs, the manifestations of use. And I think even on this day, under these conditions, with this hazard they put there, yes, it was reasonably foreseeable that the users. It was reasonably foreseeable that the plate makes it foreseeable that people are going to be walking outside the crosswalk. We're back to the snow, aren't we? I think it's reasonably foreseeable that when the pedestrians cannot see the snow, that they may veer over to the left or to the right. And this plate was close enough to those lines that it was reasonably foreseeable that commuters are going to cross over that. So you take some precautions. Because public safety is the concern. That's why we have these laws. It's not to protect the city from liability. That's secondary. But it's also to tell the city what their duty is. So they know in advance what they need to do. And so that's my question. Well, the duty is to maintain your property. There's no new law. That's not what the act says. The act doesn't say that. The act says that they have a duty to people that are using the property in the way it's intended. And that brings us back to the question of whether that spot is intended to be used in the way it was used. And intended to be used at such times as was reasonably foreseeable. And I think the Court's presented with a mixed question of fact and law, which is perhaps the difficulty. I think a jury is required to make some calls on these facts, whether it was reasonably foreseeable. Well, I think that just tells us that, you know, you have permitted users, but then the question isn't really simply is this a permitted use. Well, again, it's really did the city intend for users to be outside the crosswalk? Does the weather change that? Does the snow change that? The city's answer is going to be no. Well, I don't find any cases that would suggest that the weather is going to impact their intent. I really don't. I understand that. But in Marshall we have mud. We have some conditions of nature. We don't have a precise answer or we wouldn't be here probably. The coal case cited within a storm sewer grate, you know, causing a reasonably dangerous. I think those, you know, Marshall may be helpful, but I do think we need to, you know, kind of look at crosswalk cases. Okay. I'm focusing just on the crosswalk cases. And perhaps on the other side of the coin, the courts have explained what constitutes objectively persons who are not intended and permitted users. Persons engaged in illegal conduct such as jaywalkers, people who are double parked, people who are violating an ordinance like the delivery man in the alley who is not supposed to be there. Okay. Not an intended and permitted user. We can all agree on that. Is that the plaintiff? No. If you made a bad choice or an unnecessary choice. Well, this was clearly an unnecessary choice. There's absolutely no reason why people have to be moving in, you know, widths of 20, 30, 40 people. There is no. There is no. This is totally unnecessary. Because let's face it, you can sit and you can stand and you can wait and take your turn to get into this crosswalk. Only if you could see it, Your Honor. That's the problem here. It presumes that she could see it and the facts do not support that conclusion. And it improves she made a cognitive decision to walk outside like that outlier. If we took it as a unmarked crosswalk, then are we going to use the sidewalk as the lateral lines? The sidewalks and lateral lines are one indicator according to the courts. Other visible markings, they say the walk, don't walk signs. Are you there? They're there. That's reasonable. She's within that range of reasonableness for what constitutes a crosswalk when you can't see the lines or there are no lines. Customs, walking with a group, that's a custom. In this case, are the sidewalk lines the same as the crosswalk lines or do you even know? We don't know that from this record, Your Honor. All right. So there's a question of fact. All right. We do know, and, again, I must respectfully urge the court that the record does not support a conclusion as a matter of law that she just made a bad choice. The evidence is she thought she was in the crosswalk. She could not see the lines. Deron White supports that. And then there are a couple. There's one other case. What did the walker in Marshall think? What did he think? Yeah, was there any? I don't require a discussion of this thought process. Because you keep insisting that we should be looking at what she thought and what her friend thought. But I just wondered if there was any discussion of what the walker in Marshall thought. Well, the whole concept of thought goes to credibility of a witness. Yeah. And, you know, I mean, when a jury is trying to evaluate, A, were you, you know, were you within a crosswalk? Juries have to decide were the lines invisible? We know there was snow over them. Under Pedrick and summary judgment, we get the reasonable inference. We can infer that they were invisible because that's all the facts support. Number two, in the absence of lines, because of the snow, we go to the unmarked crosswalk case. And there we get the explanation that you have to look for other factors. So are you taking a position that this is strictly an unmarked case? I believe it is an unmarked crosswalk case. And so there's multiple factors that a jury can look to to determine whether the plaintiff was an intended and permitted user trying to cross the street within a crosswalk. Okay? And I think the facts support that conclusion. Well, you're going to have some time for rebuttal. Is there anything else you wish to say at this juncture? But we will give you ample time to. Not at this time, Your Honor. All right. Thank you. Good morning. Why don't we start by talking about the metal plate? What would Your Honor like? Well, can you respond to these comments that on this particular date, that we have a crosswalk that's covered with snow, but in addition, next to that crosswalk, we have a metal plate, and there's every indication that she stepped on the metal plate and fell and that she caught on something that was there. Right. How would you suggest we distinguish Marshall then from this? Well, Marshall was a parkway case. It doesn't have anything to do with the city street. Isn't the parkway, aren't those cases, don't they also discuss the intended and permitted user concept? They certainly do. So you would just say, well, it's a parkway, forget about it. Don't even listen or concern yourself with what's written in the Marshall decision. The factors are so different. That's correct. Don't concern yourself with what is going on. All right. Can you tell me how are the factors so different when we're talking about intended and permitted users in a parkway versus a crosswalk? Well, my understanding of that case, and it's been a while since I read it, but my understanding of that case is there was mud on a sidewalk. The city had to maintain the sidewalk because people on sidewalks are intended and permitted users of the sidewalk. There was mud on the sidewalk forcing the person off the sidewalk into the parkway, and under those circumstances, with mud on the sidewalk forcing the person off, the court held that there was a duty to maintain the parkway in that circumstance. All right. So by analogy, you've got someone who's in a crosswalk that, by all accounts, is not visible. Well, she wasn't forced into the crosswalk. She could easily have walked across within the crosswalk lines. So he was in the parkway. He was on the sidewalk. He was doing what he was supposed to do, walking on the sidewalk, but he was forced off the sidewalk because of the condition of the mud. That's my understanding. Yes, I understand. Okay, here we have a person who is not forced off the crosswalk but is arguing that because of the snow and the invisibility of the crosswalk, that now we don't really have a marked crosswalk. We have an unmarked crosswalk. Well, that's her argument today. There's no mention of an unmarked crosswalk in a reply brief at all. Well, I think that the opening brief certainly suggests alternative theories, and one of those being that we should interpret this as an unmarked crosswalk. Well, her opening brief did make that argument. That was her argument below. So then to say that it's not in the reply brief, what's that? Well, the reason why I fully expected, since there's no wording at all in there, we made an argument, an elaborate argument in our response brief. There's no wording in her reply brief at all, and with good reason. The facts don't support it. We pointed out what the definition of an unmarked crosswalk is and that it has to do with whether or not a person is between the curb line and the building line, not the property line, and her affidavits that she submitted don't establish that. And you have to be within the curb line and the building line in order to be within an unmarked crosswalk. Okay, so we can't infer into the record that this is an unmarked crosswalk case, based upon the lack of any information in her affidavit. Well, I think that's right. And, of course, we have cases like Williams v. Manchester, decided by the Illinois Supreme Court, and Swisher v. James, decided by the Illinois Appellate Court, this court, but a different division or different district. And those cases establish that when the defendant comes in and points out the element of a claim that the plaintiff has failed to present evidence of, the plaintiff has to establish that they have presented evidence with respect to it. We defended on summary judgment on the ground that the plaintiff wasn't an intended and permitted user. And she even argues that she was within what would have been an unmarked crosswalk had there been a crosswalk there. And yet she didn't come in with the right affidavits to establish that, in fact, she was within an unmarked crosswalk. Plaintiff has the burden of proof in the case, that the burden to prove the duty, has the burden to prove that she was an intended and permitted user. To do that, she needed to show that when she stepped into the crosswalk, into the street, she was within an unmarked crosswalk, if that's going to be her theory. She failed to do that. And because she failed to satisfy her burden of proof, in connection with the summary judgment motion, the court correctly granted summary judgment. Well, let me ask you this. Can't it be argued reasonably that when there is snow, and that the crosswalk is no longer marked because it's not visible, that then that person would be subject to the interpretation of an unmarked crosswalk? We don't think that that is a correct understanding. Isn't this kind of a very unique situation, this case? I mean, it's actually unlike any other that I've seen, and probably you've seen, and you've been doing this for a long time, and so have the attorneys on the other side. I haven't seen this particular fact pattern, but the factors are pertinent. And the question here is, the case law has established that intended and permitted means crosswalks. It doesn't mean outside crosswalks. And in this case, as the case comes to today, as the case has developed, she wasn't within either a marked or an unmarked crosswalk. She was completely outside of both. And yet she's arguing that somehow. Well, now, could you help us with the second unmarked situation? You're saying the record establishes clearly that she was not in what would have been an unmarked crosswalk. Well, actually, what I'm saying is, when we pointed out that we were defending on the ground that she was intended and permitted, and she made the contention, no, I'm within an unmarked crosswalk, that was what she argued both in the circuit court and argued in her opening brief. It was incumbent upon her in the circuit court to come with evidence that she was actually within an unmarked crosswalk. And she didn't do that. She failed to do it because the only evidence in the record pertaining to where she stepped in the street was the evidence that she was between the curb and the property line, excuse me, the curb and the building line. And the answer is she had to be between the curb and the property line. And because she failed to establish that she was within what an unmarked crosswalk was, she can't prevail. Now, she couldn't prevail anyway because there's absolutely, it would be inconsistent with the notion of intended and permitted. Intended means what the municipality intends. And we have manifested our intent by painting the white line. All right. But then we have kind of a little bit of a twist. We have a day when there's snow, and according to her own testimony and this other person, the crosswalk wasn't visible. So what happens in that instance? What is the duty or what is the intent when there is this situation occurring? The other person didn't testify. The other person gives an affidavit after the deposition. She testified, and her testimony was that it was light vesting of snow, that snow did not prevent a vision problem, and that her view of the metal plate had been obstructed only by pedestrians and not by anything else. We then come in and respond, and, of course, now she produces this affidavit in our motion for summary judgment. We point this out, that there's no evidence that it was even obscured. Her whole theory about obscuring is completely false. What is obscured, the crosswalk or the plate or what, or both? That there's no evidence that snow at all had any effect on her vision to see anything. And she then rushes in and says in her affidavit, a very artistically drafted affidavit, she says the combination of the pedestrians, the crowd of pedestrians and the snow prevented her from seeing it. In other words, she doesn't commit even in her affidavit that snow alone prevented her from seeing it. It's only that the combination of snow and pedestrians prevented her from seeing it. Are you talking about Ms. Harden now or the witness? I'm sorry. Ms. Harden in her affidavit says that the combination of snow and pedestrian use and crowd of pedestrians prevented her from seeing it. She never commits that snow itself prevented her from seeing it. Are you able to infer from that that the snow at least partially obscured her view of the crosswalk? Well, no, because her only testimony at her deposition when we interrogated her was that snow wasn't a vision problem for her. It's only after she realizes the consequence of that statement that she comes in with an affidavit trying to resuscitate her testimony at her deposition that she now makes that argument. But passing that aside, even assuming that she was within an unmarked crosswalk and absolutely this record does not establish that she is and she's foreclosed because it doesn't establish that she had the burden, but even assuming that she was, it would be an untenable thing for the city to do to expand all of its effort to maintain all of its crosswalks in the city by expanding them to include what might be a broader crosswalk, an unmarked crosswalk, than the ones that we mark to make sure that everyone knows. And the case law is extremely clear that even if it's very inconvenient for people, even if they have to walk a half a mile to get to a crosswalk, that they have to do that. Here, charging her with the knowledge of the law, which we're all charged with, knowing that in order to be safe, in order to be protected, in order to be able to recover from the city if there's anything in that roadway, she's got to be within the marked crosswalk. And remember, she crossed this crosswalk every day, well, several times a week for a whole year and knew that there were crosswalk lines there. This isn't a case where she didn't know that there were crosswalk lines. This is a case where she knew there were crosswalk lines, so she testified that she did, and she easily could have reached down if she wanted to and found the crosswalk line and walked across the street because they're perpendicular. She doesn't have to do anything but just a little bit of the crosswalk. She can walk across the street within the crosswalk. Are we ever really looking at what she was thinking? Is that something that we concern ourselves with as far as the immunity provision? No, because the statute specifically says that the city's duty, municipality's duty, touches on whether it intends and permits. What about the conditions? What are the factors that we're looking at? What about the conditions that particular day? There was a light dusting of snow. We've all been out on a light dusting of snow. We know that if you look down at the ground and you care about where you're looking, light dusting of snow does not mean that the lines are obscured. But even if it were heavier than that, even if they were obscured. Well, let's take the worst case scenario. You have a marked crosswalk. There's a dusting of snow, and the lines are obscured. Any different result? No different result. And why not? Because the touchstone of these cases is whether the pedestrian is an intended and permitted user of the street. And the case law establishes that the municipality's intent governs, and nothing could be clearer than that the municipality's intent is manifested by the lines. And that's so even if they're obscured. If the municipality had to maintain a broader area, you'd have to maintain it three of those 65 days a year. Well, that's another question I have for you. And that is, are we looking at this under, you know, the facts of this particular case? Are we looking at it from a more broader view? And that is that this type of scenario would require, then, a burden of enormous potential for the city to have to do something for every crosswalk when there is a dusting of snow. Or are we looking at this as this individual case, which is what I think the plaintiff is seeming to argue? Well, when we have a statute that sets out the state's policy with respect to this, it's clearly designed to limit the areas of municipally owned property that the municipality must maintain. That's what that 3-102 of the Tort Immunity Act does. It sets forth the duty, and it specifically limits it for the reasons that Your Honor mentioned, which is to avoid, to ensure that the municipality doesn't have an enormous burden to maintain property for the entire street. And actually, her theory is- But this isn't the entire street, though. I mean, let's take a look at it from a different point of view. This is a heavily trafficked intersection. People coming from and going to the trains. And you know it snows. And this is just, I mean, it's just a couple feet outside the crosswalk. The city, it's not a great leap for the people who put that plate down to know people are going to walk on this plate. I mean, the engineers or whoever put this plate down had to know this is where everybody goes from and to the trains. Huge crowds. It snows. You know, I don't think it's a great leap to say the city knew people are going to walk on this plate. So why is it such a burden if the city, whoever put that plate down, if the city, you can reasonably infer that the city was going to know that people were going to walk on this plate. Don't put a plate with holes on it in front of people that are going to be walking in the snow. Why is that such a burden? Well, it's a burden because, well, first of all, the test is not whether the city should have known. The test is not that. That's foreseeability. And case law, the Voidilla case, W-O-D. I'm talking about the burden. I'm not telling you about foreseeability. I'm assuming foreseeability. Why is it such a burden when you come to a crosswalk that is this heavily trafficked? Why is it such a burden to not put a plate with holes on it? I mean, you know, when those guys put that plate down, they had to know people were going to walk on this plate. Well, but that's the difference between foreseeability and intended and permissible foreseeable users. That's what the Voidilla case addresses. All right. Here's the situation, though. Let's take that plate away. Okay? Let's take the plate away. All right. Let's have an enormous pothole right there. We still have the crosswalk, and now we have a pothole. So where are we? Same. All right. It's the same. There are cases like that, aren't there, where we've got people outside of crosswalks for whatever reason, and we've got enormous potholes in the street. Right. And the Tort Immunity Act has been imposed. That's correct. And the Evans case is actually a case in which an open utility hole only 15 inches outside of an unmarked crosswalk, a person fell into that open utility hole, and yet the court held that because it was not within the unmarked crosswalk in that case, the person, the pedestrian was not an intended and permitted user and upheld summary judgment for the city in that case. The problem I have with this case is, you know, if we accept the plaintiff's argument, then we're going to be extending crosswalks to dangerous areas outside the marked lines, that the city has a duty now outside those lines. As much as, you know, the idea of drawing the line is a difficult one, we would be extending the duty to any time that we have a problem outside a crosswalk when the individual actually is outside the crosswalk. Take care of those big potholes now. Well, that's correct. If there were a ruling that if it's really close to the crosswalk and if there's some reason to believe that it's obscured, the city might be liable, then the city would have to expend enormous resources doing two things. One, going out and ascertaining that all of its intersections in the city, because remember, every intersection has either a marked crosswalk or an unmarked crosswalk, to make sure that there's no potential problem just outside of a crosswalk. Or farther than that, how far do you go? How far out of the crosswalk do you go? Fifteen inches? Two feet? Five feet? Where does it end? That's why 3102, the case law has interpreted 3102 to be based completely on the municipality's intent about where it wants, where it intends for people to go. And the case law doesn't envision expanding that area because that would impose enormous and expensive obligations on the city that it can't use for other things. You know, it's all too tempting in this case, of course, to be sympathetic to the plaintiff. Of course she was injured, and of course it would have been nice in retrospect for that plate not to have been there. But it was there, and it's possible that those things are in various places around the city, but we simply can't be required to undertake the enormous and expensive obligation to maintain all those areas. As opposed to expanding the crosswalk, the plaintiff seems to today be kind of falling back into one position, and that's this, because of the snow, that this is an unmarked crosswalk. And so my question for you is, why is it not a question of fact as to whether or not, if we were to assume that it was an unmarked crosswalk, why is it not a question of fact as to whether or not she was within the bounds of what would be considered to be an unmarked crosswalk? Because that ignores that we're not in the area of reasonable inferences anymore. There's only one item of evidence that bears upon the question, and that's the affidavits that she and Mr. White, her colleagues, submitted. They establish only that she was between the curb and the building line, but the building line can go farther in, away from the curb, than the property line. And the definition of crosswalk, of an unmarked crosswalk, is the property line. It's a much narrower definition. I thought it was under the vehicle code, what a unmarked crosswalk is. I thought it was the lateral lines of the sidewalk. It is. It is. But then there's the definition of what the sidewalk is. All right. And so, oh, all right. And what is the definition of sidewalk? The definition of a sidewalk. Is. And we actually set that out in the last couple of pages of the brief, the definition of sidewalk, because the definition of crosswalk bears upon the definition of sidewalk. The definition of sidewalk is the area between the curb and the property line. And her affidavits don't talk, don't put her in that area. They put her in the area between the curb and the building line. And the reason that it's not an issue of fact anymore. Which would expand. It would expand. Right. In other words, what she does, for all you know, based on the evidence that she's presented, she's outside of the unmarked crosswalk between what would have been the building line and the property line. Okay. And that, so she hasn't established what she needs to do to be within the unmarked crosswalk. So your position would be that she's therefore failed under seal attacks to marshal the evidence to support theory. That's right. She runs the risk at that point that if she doesn't present the evidence that firmly, evidence that at least some evidence that she's between, that she's within the unmarked crosswalk, then she's not within the unmarked crosswalk. But again, you know, this is a sojourn in my mind. Because we certainly wouldn't want a ruling that suggests that on snowy days, when there's any suggestion of snow, that it actually becomes an unmarked crosswalk case. Because that would enlarge the city's expense and burden, taking away all the other city services from its citizens and visitors. Anything further? No, Your Honor. The judgment of the circuit court should be affirmed. All right. Thank you. Doubt? Muddle? Thank you, Your Honors. I won't belabor the issues, but I'd like to make five brief points of clarification. First of all, with respect to the amount of snow, I know the city has seized on the terminology dusting, but if I may refer the court to the facts of record, pages 27 through 28 through 29 of the plaintiff's deposition, she testified of a snowing. There was a layer of snow. It was a covering. She said a dust across the street. So the amount of snow is in dispute. It's not some de minimis amount. Is it too much to ask of your client who's wearing boots to take her foot and scrape off that dusting or covering to find out where the crosswalk is before she ventures out? This is an interesting point, Your Honor, and I do have that as one of my points. I heard counsel say that she should even reach down and feel where the lines are. I made it a little easier. Let's talk about her. She said she was wearing boots, right? People are acting reasonably. In hindsight, would she have done everything possible to avoid her injury? No, absolutely. But what is reasonable at the time? She stepped off the bus, and I think it is relevant. She thought she was within the crosswalk when she stepped off of it. That's testimony. It's a fact. Here's what she said. Let me back up to the facts. I don't see any case that you've supplied us with that would suggest for one minute that her thoughts and her subjective beliefs that she was in the crosswalk really impacts this decision. If you could give me some case. Her actual testimony. In going back on Marshall, Marshall was, as counsel pointed out, the sidewalk, and that person was on the sidewalk. He was in the area that he was an intended and permitted user. But intended, no doubt. We don't have that here. We have someone who from the get-go is not in the crosswalk. She's on the metal plate, which she knows is outside the crosswalk. She justified that she had seen that and was aware that it was outside the crosswalk. We only know that after the fact. We've only developed that evidence and came to that realization after the fact. I'm sorry, I appreciate, and I obviously didn't answer the court's question. We got hung up on the word thought. I can direct the court to the evidence. In her deposition, page 593, quote, at the time she got off the bus, the entire plate and crosswalks and the marked lines were covered with snow. Close quote. The picture, page 592, that they brought in from a nice sunny day, shows where the plate was located. This is what she testified to after the fact. However, on the same page, when she's talking about December 1, 2008, it does not show the conditions at the time. I'll go to page 8, pages 844 and 846 in the record, her affidavit. Paragraph 5, I stepped into the street where the crosswalk lines are located. That's her testimony. Now, what she thought, she's testifying to that. She learned after the fact with the subsequent evidence that that wasn't the case, but that is her testimony on that day. Right, but is it a fact that she was in the crosswalk, or is it a fact that she slipped and fell outside the crosswalk on the metal plate? Is there any material question of fact about that one? No. Okay. No, there is not. However. Let's change the facts slightly. If there's no snow and we have a plate, she doesn't prevail. Correct. All right. Yeah. Now, let's change it, take the plate away. Let's put a big pothole in the middle of the area of the crosswalk. Not in the middle. Put it in the middle of the street. Any duty? Yes, liability. If the pothole is outside the crosswalk. I'm talking about outside. Possibly. There are cases like we have cars parked. There, in fact, is one pedestrian. Well, the car parking case is not going to, you know. Well, no, I mean. That's a different. There was a specific exception that was carved out for that case. Well, there was about three of those cases. You can't really. Yes, there are. Yeah. But the beginning case was on the, I think it was, the person had to walk onto the parkway, didn't they? That's one of them. That's Marshall. But the first one. Yes. No, no, I'm talking about the car. Another one. Where the person had to get out of their car. They had to park. They had to get out. There's no way out in a car. Yeah. Okay. Yeah, but we have delivery men who are going to the back sides of their cars. We have cases, again. We'll go back to your five points. Okay. All right. Okay. So the amount of snow, just correcting those facts, to answer the court's concerns about whether there's this broad duty to plow every time there's a dusting of snow if you send this case to a jury, the answer is no. Those cases are covered by the unnatural accumulation of snow line of cases. That's different. We're talking about a specific. No, we're talking about crosswalk cases. I'm not talking about unnatural accumulation. Crosswalk cases per se are covered by the natural accumulation of case law, natural accumulation of snow case law. Dozens, dozens of those cases. That's a different rule of law. What we have here is undisputably, one thing we know, a situation where a city created a hazardous condition. Outside a crosswalk. Close enough. Therefore, was it reasonably foreseeable and actually. I think we all agree with you. It's reasonably foreseeable that people are going to walk outside the crosswalk because they do it every single day. Well. They do. I think that's different. On snowy days, you have people trying to be law-abiding citizens, trying to do the right thing. And that's what we have here. And I had in my original notes, and I would like to direct the court, it's in the cases cited in the party's brief, section 3-103 will also answer this question. If the entity has created an unreasonably safe condition, there's liability. So 102 and 103 have to be read in tandem. This case is different. Now, also, with respect to the duties and whether she should kick her boots around and feel down with her glove at every intersection, the city advocates that a pedestrian should do that, but yet they have no obligation to maintain their own property. I mean, where is the logic, the fairness, the equity of that? But putting that aside, in answering one of Your Honor's questions about or a concern that why couldn't she wait until the throng of pedestrians were gone and then stay within the lines, it presumes she could ever see the lines. Again, we have snow making them invisible, but also the law does not impose a duty impossible of fulfillment. Your question presumes she could fulfill that duty. It presumes she could see the lines. And the only evidence is she could not. And now, finally, I would like to direct the Court to the two affidavits at 844 and 847. We have those for our availability. Yes. But this is to answer a question with respect to how the Illinois Vehicle Code defines an unmarked crosswalk. It's not as counsel represented at all demarcating. It doesn't have the words property in it. I don't even know what he means by that. But within that definition, paragraph 4 of her affidavit, she says, before I stepped into the street, I was standing on the curb between Wacker Drive to the west and the building line for the building on the northeast corner to the east. So there is evidence that she was within those unmarked lines as defined in the statute and as further elaborated on in the Cabales decision. Duron White, in paragraph 5, he also. So, you know, there is case law that says you can't have both. Okay. It's either the marked or the unmarked. You can't have both. There's a case that says the courts are not at liberty. Who can't have both, Your Honor? Either side. The courts are not at liberty to interpret. Oh. So, which one is this? Unmarked. You give us the definitive. All right. Unmarked. Well, I would say the case has been very well argued and well briefed on both sides and very unique factually, and we appreciate the comments. Is there anything further you wish to add? No, Your Honor. We just would really request that you reverse and send us back to a jury. Thank you for your attention. All right. Thank you all for your participation today. We'll stand in recess. We have to switch panels for our next case. Thank you, Counsel.